IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK07-82609 |
| | ) | |
| JODIE KENNEDY, | ) | |
| | ) | CH. 7 |
| Debtor(s). | ) | |

<u>ORDER</u>

  Hearing was held in Omaha, Nebraska, on March 31, 2008, regarding Filing No. 21, Motion to Disqualify William Bianco, filed by Jodie Kennedy. James Crampton appeared for the debtor and William Bianco and Ryan Caldwell appeared for Michael Kennedy.

  The debtor and her former spouse, Michael Kennedy, were involved in a dissolution of marriage action which was contested concerning child custody, child support and child care expenses. During some of the litigation with regard to the dissolution action, attorney Stephen Stroh was an associate in the office of Pamela Govier, who was then the attorney for Jodie Kennedy, and he participated in certain matters related to the litigation. He and Jodie Kennedy corresponded several times concerning the litigation.

  Mr. Stroh is now affiliated with William Bianco, counsel for Michael Kennedy. Jodie Kennedy has filed this Chapter 7 bankruptcy case and Mr. Bianco, on behalf of Michael Kennedy, has filed an adversary proceeding concerning the dischargeability of Jodie Kennedy's obligations arising from the dissolution of marriage decree. Mr. Bianco has also filed a motion for relief from the automatic stay on behalf of Michael Kennedy so that Michael Kennedy can proceed in the court that granted the dissolution of marriage to find Jodie Kennedy in contempt for failing to comply with terms of the dissolution of marriage decree. Finally, Mr. Bianco has filed a motion to dismiss the Chapter 7 case for abuse, alleging that Jodie Kennedy has listed child support and child care on her schedules, but that she either does not pay any amount for those items or she pays significantly less than what she has listed.

  Mr. Crampton, Jodie Kennedy's bankruptcy attorney, has filed a motion to disqualify Mr. Bianco and his firm from representing Michael Kennedy in the bankruptcy case because of Mr. Stroh's involvement in the dissolution of marriage case.

  Mr. Bianco vigorously denies that he has a conflict of interest. It is his position that the motion to dismiss presently pending has nothing to do with the dissolution of marriage case, so he has no conflict.

  Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law. <u>In re Dresser Indus., Inc.</u>, 972 F.2d 540, 543 (5th Cir. 1992). The Eighth Circuit Court of Appeals has not articulated a clear standard for ruling on such motions. The best guidance has come from the Federal Circuit in <u>EZ Paintr Corp. v. Padco, Inc.</u>, 746 F.2d 1459 (Fed. Cir. 1984) (applying Eighth Circuit law), where the court stated:

> The precise rule on disqualification applied in the Eighth Circuit . . . is not clear but we are satisfied that that Circuit would not be less solicitous of client confidentiality than the general weight of authority which is that – where a

substantial relationship is found to exist between two adverse matters (and sides) in which the challenged attorney or his firm has participated and will participate – there is a presumption (in the situation of a private lawyer's "changing sides") that confidential disclosures passed to the challenged lawyer, but that presumption is rebuttable.

746 F.2d at 1461 (footnote omitted).

The leading case in the Eighth Circuit in this regard is Arkansas v. Dean Foods Products Co., 605 F.2d 380 (8th Cir. 1979), *overruled on other grounds by* In re Multi-Piece Rim Products Liability Litigation, 612 F.2d 377 (8th Cir. 1980). In Dean Foods, the court rejected any "bright line" rules, such as the one existing in Nebraska[1], stating:

> Disqualification of counsel, like other reaches for perfection, is tempered by a need to balance a variety of competing considerations and complex concepts. Disqualification in spasm reaction to every situation capable of appearing improper to the jaundiced cynic is as goal-defeating as failure to disqualify in blind disregard of flagrant conflicts of interest. Between those ethical extremes lie less obvious influences on the interest of society in the orderly administration of justice, on the interest of clients in candid consultation and choice of counsel, and on the interest of the legal profession in its reputational soul.
> So too, the judicial effort to light a disqualification path is unlikely to result in an early formulation of rules universally applicable to the Canons of the Code of Professional Responsibility. Rigid rules can be sterile and lacking in universal application. At the same time, an "every case on its own facts" approach can be facile and unhelpful. Ethical experience is the key. Until more is gained, rigidity may be feasible at the far ends of the ethics spectrum, while flexibility governed by facts must reign in a gradually diminishing area between those extremes.

605 F.2d at 383.

To that end, the Eighth Circuit Court of Appeals encourages courts "to strictly enforce the Code of Professional Responsibility." Central Milk Producers Coop. v. Sentry Food Stores, Inc., 573 F.2d 988, 993 (8th Cir. 1978). "In exercising this responsibility, the Court should also consider 'the ABA Code of Professional Responsibility, the court's duty to maintain public confidence in the legal

---

[1]The Nebraska Supreme Court, in State of Nebraska ex rel. FirsTier Bank, N.A. v. Buckley, 244 Neb. 36, 503 N.W.2d 838 (1993), adopted a "bright light" rule concerning attorney representation of a client in litigation against a former client. The court stated:

> We now hold that an attorney must avoid the present representation of a cause against a client of a law firm with which he or she was formerly associated, and which cause involves a subject matter which is the same as or substantially related to that handled by the former firm while the present attorney was associated with that firm.

244 Neb. at 45, 503 N.W.2d at 844.

profession and its duty to insure the integrity of the judicial proceeding.' Olson v. Snap Prod., Inc., 183 F.R.D. 539, 542 (D. Minn. 1998) (quoting United States v. Agosto, 675 F.2d 965, 969 (8th Cir. 1982), cert. denied, 459 U.S. 834 (1982)).

In the District of Nebraska, however, attorneys admitted to practice before the federal court are not governed by any particular code of professional responsibility, although the court may look to the Nebraska Rules of Professional Conduct for guidance.[2] General Rule of the United States

---

[2]In addition to the Nebraska Supreme Court authority cited previously, certain provisions of the Nebraska Rules of Professional Conduct are relevant to the matter before the court. Article 1 governs the client-lawyer relationship. Rules 1.10, 1.9 and 1.7 are particularly applicable. They provide as follows:

> RULE 1.10.  IMPUTATION OF CONFLICTS OF INTEREST: GENERAL RULE
> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.
> . . .
> (c) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7
>
> RULE 1.9.  DUTIES TO FORMER CLIENTS
> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
> . . .
>
> RULE 1.7.  CONFLICT OF INTEREST: CURRENT CLIENTS
> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:
> > (1) the representation of one client will be directly adverse to another client; or
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> > (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> > (2) the representation is not prohibited by law;

(continued...)

District Court for the District of Nebraska 1.7(b).[3] In fact, a judge in this district has specifically held that "the ethical rules adopted and interpreted by the Nebraska Supreme Court do not govern the substantive legal question of whether a lawyer should be disqualified from representing a client in a case pending in federal court." Steele v. Lacey, 1997 WL 138974, at *1 (D. Neb. Mar. 26, 1997). See also Engineered Prod. Co. v. Donaldson Co., 290 F. Supp. 2d 974, 980 (N.D. Iowa 2003) (while state standards and local rules are relevant, motions to disqualify counsel are to be decided under federal standard). Instead, a three-part test developed under federal law should be used when determining whether a law firm should be disqualified when a lawyer who had been a member of one firm, which represented an adverse party, later joins another firm representing a party on the other side. First, the court must determine whether a substantial relationship exists between the subject matter of the prior and present representation. Second, the court must determine whether the attorney whose change of employment created the issue was actually privy to any confidential information that his prior firm received from the party now seeking disqualification. Third, the court must determine whether the firm facing disqualification has taken appropriate steps to insure that its new member has not shared confidences about the member's former firm's clients. Id. at *4.

Under the relevant considerations, the issue here is whether the bankruptcy case is substantially related to the dissolution of marriage case. It is a close call. If Mr. Kennedy were seeking to modify the terms of the divorce decree, then it seems clear that the matters are substantially related and that a potential conflict exists. However, the issues in the bankruptcy court, concerning Mr. Kennedy's allegations of erroneous information in the schedules and the non-dischargeability of the debt, appear to be premised on the four corners of the decree and therefore less likely to be subject to the threat that confidential information obtained by Mr. Stroh in the course of the divorce proceedings would be used against the debtor now.

---

[2](...continued)
        (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
        (4) each affected client gives informed consent, confirmed in writing.

[3]Nebraska General Rule 1.7 reads, in pertinent part:

Rule 1.7  Practice of Law
    . . .
    (b) Ethical Standards. The standards of conduct governing the members of the bar of this court are these:
        (1) Rules. Counsel shall comply with the rules of this court; and
        (2) Conduct. Counsel shall refrain from conduct unbecoming of a member of the bar.
            (A) The court declines specifically to adopt particular codes of professional responsibility or particular codes of ethics promulgated by others.
            (B) However, and in addition to any other material, the court may consult codes of professional responsibility or codes of ethics promulgated by others when determining whether a lawyer has engaged in conduct unbecoming of a member of the bar.

Nevertheless, the decision of whether to disqualify rests in the sound discretion of the court and is subject to particularly strict judicial scrutiny. Harker v. Commissioner, 82 F.3d 806, 808 (8th Cir. 1996). Doubts should be resolved in favor of disqualification. Coffelt v. Shell, 577 F.2d 30, 32 (8th Cir. 1978); Engineered Prod. Co. v. Donaldson Co., 290 F. Supp. 2d at 980; Olson v. Snap Prod., Inc., 183 F.R.D. at 542.

While Mr. Bianco asserts that matters arising in the bankruptcy case are not the same or substantially related to the dissolution of marriage case, I disagree. The only reason Michael Kennedy is involved in the bankruptcy case is because of the obligations placed upon Jodie Kennedy by the decree of dissolution of marriage. Part of the basis for the motion to dismiss is that Jodie Kennedy has erroneously listed the monthly amount of certain obligations arising from the dissolution of marriage decree. The only reason Michael Kennedy filed a motion for relief from the automatic stay is so that he can proceed in the dissolution of marriage court with further litigation against Jodie Kennedy. The only reason Michael Kennedy has filed an adversary proceeding in this bankruptcy case is so that he can litigate the dischargeability of certain obligations arising from the dissolution of marriage decree.

In other words, everything about Michael Kennedy's interest in this bankruptcy case concerns the dissolution of marriage case. Mr. Stroh was a member of the firm that represented Jodie Kennedy during a portion of the dissolution of marriage litigation. Mr. Stroh is now a member of the firm with Mr. Bianco. The litigation in the bankruptcy court concerns matters arising from the dissolution of marriage decree. The standards governing attorney conduct require disqualification of Mr. Bianco and his firm from representing Michael Kennedy in the bankruptcy case.

IT IS ORDERED that the motion to disqualify (Fil. # 21) is granted. The pending motion to dismiss filed by Michael Kennedy (Fil. #17) is deferred. If he obtains other counsel and desires to proceed with the motion to dismiss, counsel may request a hearing. If no hearing is requested by May 1, 2008, the motion will be denied without prejudice. The United States Trustee has been given until April 28, 2008, to file its own motion to dismiss for abuse. Mr. Bianco and his firm are disqualified from representing Michael Kennedy in the adversary proceeding, Case No. A08-8018.

DATED:        April 8, 2008

BY THE COURT:

/s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
    *James Crampton
    William Bianco
    Ryan Caldwell
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.